IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

JOHN S. CHEW, JR.; THE JOHN S.
CHEW, JR. REVOCABLE TRUST;
KAREN TRUMPORE F/K/A KAREN
ROBINSON, INDIVIDUALLY AND AS THE PARENT
AND LEGAL GUARDIAN OF THREE MINOR CHILDREN
CLAIRE E. ROBINSON, KELLY P.
ROBINSON , AND OLIVIA A ROBINSON;
THE CLAIRE E. ROBINSON
SUBCHAPTER S TRUST; THE KELLY P.
ROBINSON SUBCHAPTER S TRUST;
THE OLIVIA A. ROBINSON
SUBCHAPTER S TRUST; AND NORTH
HAMPTON INVESTMENTS, LLC                              **PLAINTIFFS**

VS.                              CIVIL ACTION NO. 3:04CV748BN

KPMG, LLP, PEDER JOHNSON, TRACIE
HENDERSON, DONNA BRUCE, SIDLEY
AUSTIN BROWN & WOOD LLP, R.J.
RUBLE, DEUTSCHE BANK AG,
DEUTSCHE BANK SECURITIES, INC.
D/B/A DEUTSCHE BANK ALEX BROWN,
PRESIDIO ADVISORS LLC, JOHN M.
LARSON, FUNSTON STREET LLC,
FUNSTON STREET, LTD., VALLEJO
STREET LLC, VALLEJO STREET, LTD.,
AND ATHABASCA, L.P.                              **DEFENDANTS**


## OPINION AND ORDER

This cause is before the Court on the following Motions:

1)    the Renewed Motion of KPMG, LLP (hereinafter "KPMG") to Compel
      Arbitration and Stay Proceeding, or, Alternatively, for
      Additional Time to Respond to Complaint (filed September 12,
      2005, under docket entry no. 90);

2)    the Renewed Motion of Defendant Presidio Advisors, LLC
      (hereinafter "Presidio") and Defendant John Larson to Stay

Proceedings, and in the Alternative to Dismiss the Complaint (filed September 13, 2005, under docket entry no. 92);

3) the Renewed Motion of Defendant Deutsche Bank AG (hereinafter "Deutsche Bank") and Defendant Deutsche Bank Securities, Inc., d/b/a Deutsche Bank Alex. Brown (hereinafter "DB Alex. Brown") to Dismiss the Action and Compel Arbitration (filed September 22, 2005, under docket entry no. 95); and

4) the Renewed Motion of Defendant Sidley Austin Brown & Wood, LLP (hereinafter "Brown & Wood") to Compel Arbitration and to Stay all Proceedings, and Joinder in KPMG LLP's Renewed Motion to Compel Arbitration and Deutsche Bank Defendants' Renewed Motion to Dismiss the Action and Compel Arbitration (filed September 28, 2005, under docket entry no. 97).

Having considered the Motions, Responses, Rebuttals and all attachments to each, as well as supporting and opposing authority, the Court finds that all four of the Motions are well taken in part and should be granted in part, and that the four Motions are not well taken in part and should be denied in part.

## I.  Factual Background and Procedural History

This cause of action arises out of Defendants' promotion and sale of a tax shelter to Plaintiffs, which was designed to avoid or limit the tax liability of Plaintiffs resulting from the sale of their family business.  The tax shelter is called the Offshore Portfolio Investment Strategy, also referenced as "OPIS" or

"strategy."[1]   The facts of this case are complex.   For purposes of
this Opinion and Order, only the relevant facts are summarized in
this and the following section of the Opinion.

Plaintiffs in this cause of action are family members, trusts
formed to benefit the family members, and an investment company
owned by one or more of the Plaintiffs.   Defendant KPMG is a large
accounting firm[2], and Defendant Presidio is an investment advisory
firm[3].      KPMG  and  Presidio  allegedly  recruited  the  Deutsche

---

[1]The substance of the OPIS is set forth paragraph 55 (pages
23-25) of the Complaint.   In brief summary, the strategy involves
a  series  of  investments  and  re-investments  in  securities  of
entities outside of the United States in an attempt, through use of
Internal Revenue Code provisions, to inflate the cost basis of the
client's investment.  When the investment is subsequently sold, the
client realizes a capital loss for income tax purposes, based on
the inflated cost basis.

[2]Defendants Peder Johnson, Donna Bruce and Tracie Henderson
are agents of KPMG.   These Defendants joined in the Renewed Motion
of   KPMG   to   Compel   Arbitration   and   Stay   Proceeding,   or,
Alternatively,  for  Additional  Time  to  Respond  to  Complaint.  See
Docket Entry Nos. 93 and 94.   This group of four Defendants is
sometimes collectively referenced as "the KPMG Defendants."

[3]Defendant John M. Larson is an agent of Presidio.   Presidio
and Larson are sometimes collectively referenced as "the Presidio
Defendants."

Defendants[4] and the Brown & Wood Defendants[5] to put the OPIS into action. Complaint, p. 13, ¶ 30.   The remaining Defendants are Funston Street LLC, Funston Street, Ltd., Vallejo Street LLC, Vallejo Street, Ltd., and Athabasca, L.P.   The primary role of these Defendants was the purchase and/or sale of call options and/or put options within the OPIS.[6]

Regarding the OPIS, the Complaint states:

KPMG would market the transaction to long-term wealthy clients of itself and the other participants.  Presidio, as the investment advisor, provided the design and rhetoric to recast the tax strategies as investment strategies.   The Deutsche Defendants would provide financing and nominal investment transactions that provided the investment "cover" to disguise the tax driven motives.   Brown & Wood would provide the purportedly "independent" opinion letters blessing the strategy and supposedly insulating the clients from

---

[4]The Deutsche Defendants include Deutsche Bank and DB Alex. Brown.  Deutsche Bank is a German corporation.  It is "a joint stock company principally dedicated to financing foreign trade." Complaint, p. 10, ¶ 23.  DB Alex. Brown is a Delaware Corporation, with its principle place of business in New York.  It is a firm which deals in the purchase and sale of securities, and is a member of the New York Stock Exchange.  The brokerage contract between Plaintiff John S. Chew, Jr. Revocable Trust and DB Alex. Brown contains an arbitration clause.

[5]The Brown & Wood Defendants are the law firm of Brown & Wood and R. J. Ruble, an agent of Brown & Wood.  Ruble did _not_ join in the Renewed Motion of Defendant Brown & Wood to Compel Arbitration and to Stay all Proceedings, and Joinder in KPMG LLP's Renewed Motion to Compel Arbitration and Deutsche Bank Defendants' Renewed Motion to Dismiss the Action and Compel Arbitration.

[6]Defendants Funston Street LLC, Funston Street, Ltd., Vallejo Street LLC, Vallejo Street, Ltd., and Athabasca, L.P. have neither moved the Court to compel arbitration of Plaintiffs' claims against them, nor joined in any of the Motions currently before the Court.

Internal Revenue Service ("IRS") penalties in the event of an audit.

Id.

Beginning in 1998, Plaintiffs began engaging in the OPIS. "The KPMG Defendants, along with the Brown & Wood Defendants, advised the Plaintiffs that, as a result of [their investments in the OPIS], it was proper to utilize the losses generated by the OPIS transaction on Plaintiffs' tax returns [for 1998 and 1999]." Complaint, p. 35, ¶ 80. "These Defendants repeatedly reiterated to Plaintiffs that the OPIS transaction was a legal tax shelter." Id. at p. 36, ¶ 80. However, beginning in year 1999 and evolving through 2002, the IRS took the position that losses based on investment strategies such as the OPIS were invalid for tax purposes. Nevertheless, Defendants allegedly persisted in advising Plaintiffs that the OPIS tax strategy continued to be valid. Id. at p. 38, ¶ 87.

In late 2001, the IRS offered a "disclosure initiative" which allowed participants in the OPIS and similar investment strategies the opportunity to disclose information regarding their transactions. In return, the IRS would forego assessing penalties based on the transactions. In April 2002, Plaintiffs enrolled in the disclosure initiative program. In October 2002, the IRS initiated another plan under which it offered to finally settle the dispute by allowing OPIS participants to avoid penalties and to recognize approximately twenty percent of claimed capital losses

relating to their OPIS transactions.   Plaintiffs accepted this offer and, as a result of the ensuing IRS audit, Plaintiffs allegedly paid over sixteen million dollars in back-taxes and interest. Complaint, p. 39, ¶ 93.  Plaintiffs also allege that they will owe additional back-taxes, penalties and interest to the Mississippi State Tax Commission. <u>Id.</u> at p. 40, ¶ 95.  Plaintiffs finally contend that they expended eight million dollars in fees paid to Defendants for executing the OPIS transactions. <u>Id.</u> at p. 44, ¶ 106.

Based on these facts, Plaintiffs filed suit against Defendants in the Circuit Court of the First Judicial District of Hinds County, Mississippi, on January 28, 2004.  The claims asserted in the Complaint are:

COUNT ONE:      Breach of contract and breach of the duty of good faith and fair dealing; asserted against the Deutsche Defendants, the Presidio Defendants, Funston Street LLC and Vallejo Street LLC.

COUNT TWO:      Breach of fiduciary duty; asserted against all Defendants.

COUNT THREE:    Fraud; asserted against all Defendants.

COUNT FOUR:     Negligent misrepresentation and professional malpractice; asserted against the Brown & Wood Defendants, the KPMG Defendants and the Presidio Defendants.

COUNT FIVE:      Breach of contract / unjust enrichment; asserted
                 against the Brown & Wood Defendants, the KPMG
                 Defendants and the Presidio Defendants.

COUNT SIX:       Declaratory    judgment;   asserted   against all
                 Defendants.

COUNT SEVEN:     Unethical, excessive and illegal fees; asserted
                 against the KPMG Defendants and the Brown & Wood
                 Defendants.

COUNT EIGHT:     Civil conspiracy; asserted against all Defendants.

Plaintiffs seek an unspecified amount of both compensatory and
punitive damages, as well as declaratory relief.

     Defendants removed the case to this Court on September 10,
2004.  Defendants contend that this Court has subject matter
jurisdiction over the case pursuant to 9 U.S.C. § 205, which sets
forth provisions for removing a case to federal court based on
chapter 2 of the Federal Arbitration Act (hereinafter "FAA").  The
arbitration agreement which forms the basis of Defendants' removal
argument is part of a brokerage contract titled "Customer's
Agreement" between Plaintiff John S. Chew, Jr. Revocable Trust
(hereinafter "Chew Trust") and Defendant DB Alex. Brown.[7]  For
reasons that become apparent below, it is important to note that

---

[7]The Customer's Agreement is attached as Exhibit "E" to
Deutsche Bank Defendants' Memorandum of Law in Support of Renewed
Motion to Dismiss the Action and Compel Arbitration, Docket Entry
No. 96.

the Customer's Agreement which contains the subject arbitration agreement was signed _only_ by Plaintiff John S. Chew, Jr. on behalf of the John S. Chew, Jr. Revocable Trust, and by Defendant DB Alex. Brown.

Plaintiffs filed a Motion to Remand (docket entry no. 18) on September 29, 2004.  That Motion was addressed through an Opinion and Order rendered by the undersigned on January 6, 2005 (hereinafter "January 6 Opinion"), and filed with the Clerk of the Court on the same day under docket entry no. 55.  The Court denied the Motion to Remand, but left the issue open for further consideration as the case unfolds.  Specifically, the Court held:

> In the Responses and Replies [to the Motions to Compel Arbitration], the parties are directed to address the issue of whether this case should be remanded in total or in part if: (1) none or less than all of the Plaintiffs are ordered to arbitrate their claims; or (2) none or less than all of the claims themselves are subject to binding arbitration.

January 6 Opinion, p. 14.

For reasons that are not relevant to the issues that must be decided herewith, a stay order was entered in this case on April 29, 2005. See Opinion and Order, Docket Entry No. 84.  The stay was lifted through an Opinion and Order filed on August 23, 2005 (see Docket Entry No. 89), and all of the subject Motions were filed soon thereafter.  The issues presented in the pending Motions, as well as further consideration of the remand issue, are now ripe for decision.

## II.  Analysis

As stated above, the _only_ document containing an arbitration agreement signed by _any_ of the parites is the Customer's Agreement signed by Plaintiff John Chew on behalf of the Chew Trust, and by Defendant DB Alex. Brown.  Based on this undisputed fact, if the arbitration agreement between the Chew Trust and DB Alex. Brown is not enforceable, then logically the arbitration agreement cannot be enforced as to any of the other parties to this suit.  Therefore, the first Motion that must be analyzed herewith is the Renewed Motion of the Deutsche Bank Defendants to Dismiss the Action and Compel Arbitration.  That Motion, as well as the three other pending Motions, are considered under the following subheadings of this Opinion.

**A.  Renewed Motion of the Deutsche Defendants to Dismiss the Action and Compel Arbitration**

The Renewed Motion of the Deutsche Defendants to Dismiss the Action and Compel Arbitration presents the following issues which must be resolved:

1)   whether the arbitration agreement is enforceable by DB Alex. Brown;

2)   if the arbitration agreement is enforceable by DB Alex. Brown, may Deutsche Bank also invoke its provisions;

3)   if the arbitration agreement is enforceable, which Plaintiffs may DB Alex. Brown and/or Deutsche Bank compel to arbitrate their claims; and

4)  if the arbitration agreement is not enforceable as to all Plaintiffs and/or claims, then should the claims that are not subject to arbitration (a) be severed and remanded to state court, (b) remain in this Court and stayed pending resolution of the arbitrable claims, or (c) remain in this Court and proceed to litigation at this time.

These issues are considered in the following analyses.

### 1. Whether the Arbitration Agreement is Enforceable by DB Alex. Brown

The enforcement provision of the arbitration clause is contained in paragraph 14 of the Customer's Agreement.  The enforcement provision states:

> THE UNDERSIGNED [DB Alex. Brown] AGREES, and by carrying an Account of the Undersigned you [the Chew Trust] agree, that except as inconsistent with the foregoing, all controversies which may arise between us concerning any transaction of construction, performance, or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration.

Id. at ¶ 14(v).  The arbitration clause also states "[t]he parties are waiving their right to seek remedies in court, including the right to jury trial." Id. at ¶ 14(ii).  DB Alex. Brown argues that the plain language of this arbitration agreement requires, at a minimum, for the Chew Trust to submit to arbitration its claims against DB Alex. Brown.  The Court agrees.

10

Many of the initial issues that must be decided in a case to compel arbitration were considered and analyzed in the January 6 Opinion.  The Court adopts herewith those analyses and holdings.

The Court now proceeds with analyzing whether the subject arbitration clause is enforceable.  Section 2 of the FAA provides that "[a] written provision in ... a contract[, evidencing a transaction involving commerce,] ... to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.[8]  The first inquiry of the Court is whether the Customer's Agreement which contains the subject arbitration clause is a "contract evidencing a transaction involving commerce."  Id. This issue is not disputed by the parties.  In agreement with the parties, the Court finds that the Customer's Agreement is a "contract evidencing a transaction involving commerce."

The Court must next determine (1) whether the dispute involves a "controversy ... arising out of" the contract which contains the

_____

[8]As analyzed in detail in the January 6 Opinion, this case is before the Court under the jurisdictional purview of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, which is embodied in chapter 2 of the FAA.  As the reader will recognize, several code sections of chapter 1 of the FAA are cited and relied upon herein.  However, the provisions of chapter 1 are applicable in this analysis because "[c]hapter 1 applies to actions and proceedings brought under [chapter 2] to the extent that chapter [1] is not in conflict with [chapter 2]...." 9 U.S.C. § 208.

arbitration clause, that is, if there is an arbitrable claim, and (2) whether any rule of contract law (looking to state law) makes the contract, or the arbitration clause, unenforceable. <u>See</u>, 9 U.S.C. § 2. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24-25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983)(citations omitted). As explained by the United States Court of Appeals for the Fifth Circuit, "[a] finding that the scope of the arbitration clause is vague does not automatically catapult the entire dispute into arbitration. Rather, such a finding creates a presumption in favor of arbitration. This presumption can be overcome with clear evidence that the parties did not intend the claim to be arbitrable." <u>Harvey v. Joyce</u>, 199 F.3d 790, 793 (5th Cir. 2000)(citing <u>Moses H. Cone</u>, 406 U.S. at 24-25).

The subject arbitration clause states in part "all controversies which may arise between us concerning any transaction of construction, performance, or breach of this or any other agreement between us ... shall be determined by arbitration." Customer's Agreement, ¶ 14(v). Given the broad language of the subject arbitration clause, the Court finds that it encompasses all disputes arising between the Chew Trust and DB Alex. Brown. <u>See</u>,

Nauru Phosphate Royalties, Inc. v. Drago Diac Interests, Inc., 138 F.3d 160, 165 (5th Cir. 1998)(holding that "when parties include such a broad arbitration clause, they intend the clause to reach all aspects of the relationship.")(citations omitted). Accordingly, the Court finds that the dispute between the Chew Trust and DB Alex. Brown involves a "controversy ... arising out of" the contract which contains the arbitration clause, thus arbitrable claims exist in this case.

Having concluded that the claims alleged by the Chew Trust against DB Alex. Brown are arbitrable claims, the Court must now determine whether the arbitration provision itself is enforceable. See, R.M. Perez & Assocs., Inc. v. Welch, 960 F.2d 534, 538 (5th Cir. 1998).  "A party seeking to avoid arbitration must allege and prove that the arbitration provision itself was a product of fraud or coercion [or] that another ground exists at law or in equity that would allow the parties' contract or agreement to be revoked." Am. Heritage Life Ins. Co. v. Harmon, 147 F.Supp.2d 511, 514 (N.D. Miss. 2001) (citing Sam Reisfeld & Son Import Co. v. S.A. Eteco, 530 F.2d 679, 680-81 (5th Cir. 1976)).

Plaintiffs contend that the arbitration agreement is unenforceable because it is procedurally unconscionable under applicable state contract law.  The first step in analyzing this issue is determining the contract laws of which state to apply. Under a paragraph titled "Successors," the Customer's Agreement

states "[t]his Agreement and its enforcement shall be governed by the laws of the State of New York...." Customer's Agreement, ¶ 15. The same statement is contained in a paragraph titled "Place of Performance - Governing Law." Id. at ¶ 16.   In accordance with these provisions of the Customer's Agreement, the Court must apply the contract laws of the State of New York in determining whether the arbitration agreement is enforceable.

In Baldeo v. Darden Restaurants, Inc., No. 04-CV-2185(JG), 2005 WL 44703 (E.D. N.Y. Jan. 11, 2005), the United States District Court for the Eastern District of New York summarized the standard by which to determine whether a contract is unenforceable as unconscionable.

> An agreement that is unconscionable is unenforceable. Brennan v. Bally Total Fitness, 198 F.Supp.2d 377, 381 (S.D. N.Y. 2002) (citing Gillman v. Chase Manhattan Bank, 73 N.Y.2d 1, 10, 537 N.Y.S.2d 787 (1988)). An agreement is unconscionable where there is an absence of meaningful choice for one party together with unreasonably favorable contract terms for the other party. Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc., 191 F.3d 198, 207 (2d Cir. 1999). Under New York law, "[a] determination of unconscionability generally requires a showing that the contract was *both procedurally and substantively unconscionable* when made." Ciago v. Ameriquest Mortgage Co., 295 F.Supp.2d 324, 328 (S.D. N.Y. 2003) (quoting Gillman, 73 N.Y.2d at 10).
>     In determining whether there was procedural unconscionability, courts look to whether a party lacked meaningful choice. Brennan, 198 F.Supp. at 382. Courts focus on evidence of high pressure or deceptive tactics, as well as on disparity in the bargaining power between the parties. Id. Inequality in bargaining power alone, however, is not sufficient to render an arbitration agreement unenforceable. Gold [v. Deutsche Aktiengesellschaft], 365 F.3d [144], 150 [(2d Cir. 2004)].

* * * * *

A contract is substantively unconscionable where its terms unreasonably favor the stronger party. Brennan, 198 F.Supp. at 382 (citing Desiderio, 191 F.3d at 207). Generally, arbitration agreements that are binding on both parties are not considered to unreasonably favor the stronger party. See Desiderio, 191 F.3d at 207.

Id. at *6-*7 (emphasis added). A party "must hurdle a high bar to establish the unconscionability of an arbitration agreement...." Id. at *6.

As indicated by the emphasized language from the Baldeo quote, a finding of procedural unconscionability under New York law requires the party seeking to avoid the contract to prove *both* procedural *and* substantive unconscionability. In their Response to the subject Motion, Plaintiffs asserted *only* procedural unconscionability arguments. Plaintiffs' Brief in Opposition to the Deutsche Defendants' Renewed Motion to Compel Arbitration, Docket Entry No. 104, pp. 3-5. That is, they failed to include any arguments pertaining to substantive unconscionability. In and of itself, Plaintiffs' failure to raise the issue of substantive unconscionability requires this Court to find that Plaintiffs' argument fails, and that the subject arbitration agreement is enforceable. See Baldeo, 2005 WL 44703 at *6.

Assuming *arguendo* that a finding of procedural unconscionability alone would suffice to render the subject arbitration agreement unenforceable, Plaintiffs' argument would nevertheless fail. Plaintiffs contend that the arbitration

15

agreement is procedurally unconscionable because: (1) the arbitration clause was "buried" within a five page document; (2) the font size of the arbitration clause was the same font size as the remainder of the Customer's Agreement; (3) the arbitration clause was drafted by Deutsche Bank and Chew lacked the opportunity to inquire about its terms; (4) DB Alex. Brown made no effort to discuss the arbitration clause, specifically the waiver of the right to jury trial; (5) Chew was not given the opportunity to revise the Customer's Agreement; (6) Chew was told that time was of the essence; and (7) Chew was told that Deutsche Bank was the only bank he could use to implement the OPIS. Plaintiffs' Brief in Opposition to the Deutsche Defendants' Renewed Motion to Compel Arbitration, Docket Entry No. 104, p. 4.

These conclusory allegations are insufficient to prove that Chew lacked a "meaningful choice," as defined by the cases cited above, when he entered into the Customer's Agreement. This finding is supported by the fact that Chew was admittedly "a successful business person" (Complaint, p. 23, ¶ 54), who had operated a family business valued at approximately eighty million dollars (Complaint, p. 19, ¶ 46). Further, Chew was represented by counsel in his dealings with the Deutsche Defendants. Complaint, p. 20, ¶ 48 n.11. For these reasons, the Court finds that Chew's entry into the Customer's Agreement with DB Alex. Brown was the result of a reasonably informed decision. That is, entry into the Customer's

16

Agreement was _not_ the result of procedural unconscionability. Accordingly, the Court will grant the Motion to Compel Arbitration to the extent that the Chew Trust will be required to submit its claims against DB Alex. Brown to arbitration.

### 2. Whether the Arbitration Agreement is Enforceable by Deutsche Bank

Deutsche Bank contents that even though it was not a signatory to the Customer's Agreement, it may nevertheless enforce the arbitration agreement because DB Alex. Brown was acting as its agent at all relevant times.  Plaintiffs do not dispute that a principal / agent relationship existed between DB Alex. Brown and Deutsche Bank. See Complaint, p. 11, ¶ 27 (stating that DB Alex. Brown is a division of a wholly owned subsidiary of Deutsche Bank). Based on the agency relationship between DB Alex. Brown and Deutsche Bank, the Court finds that Deutsche Bank may also enforce the subject arbitration agreement, at least as to the claims asserted by the Chew Trust. See, Nauru Phosphate Royalties, 138 F.3d at 166-67; Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co., 957 F.Supp. 839, 841-42 (S.D. Miss. 1997)(Barbour, J.). Therefore, the subject Motion must be further granted to the extent that the Chew Trust must submit to arbitration its claims against Deutsche Bank.

### 3. Which Additional Plaintiffs May the Deutsche Defendants Compel to Arbitration

In summary to this point, the Court has found that the Chew Trust must submit to arbitration its claims against both of the Deutsche Defendants (DB Alex. Brown and Deutsche Bank).  The Deutsche Defendants argue that the remaining Plaintiffs must also submit their claims to arbitration.  The remaining Plaintiffs are: Chew, individually; Karen Trumpore f/k/a Karen Robinson, individually and on behalf of minors Claire Robinson, Kelly Robinson and Olivia Robinson; the Claire E. Robinson Subchapter S Trust; the Kelly P. Robinson Subchapter S Trust; the Olivia A. Robinson Subchapter S Trust;[9] and North Hampton Investments, LLC (hereinafter "North Hampton").

The Court begins with considering whether Chew, individually, must submit his claims against the Deutsche Defendants to arbitration.  Chew _appears_ to concede that if the Chew Trust is bound by the arbitration agreement, then he, individually, is also bound by the agreement. See Plaintiffs' Brief in Opposition to the Deutsche Defendants' Renewed Motion to Compel Arbitration, Docket Entry No. 104, p. 2 n.1 (listing the "Nonsignatory" Plaintiffs _without_ stating the name of John Chew, individually).  Further,

---

[9]In the remainder of this Opinion, Karen Trumpore f/k/a Karen Robinson is referenced as "Trumpore." Trumpore's three children, Claire Robinson, Kelly Robinson and Olivia Robinson, are collectively referenced as "the Robinson minors." The Subchapter S Trusts which benefit the Robinson minors are collectively referenced as "the Minor Trusts."

Chew makes no arguments to the effect that his individual obligations, or lack thereof under the Customer's Agreement, are different from those of the Chew Trust.  Based on these factors, the Court finds that Chew, individually, must submit to arbitration his claims against the Deutsche Defendants.

Next considered is whether Plaintiffs Trumpore, the Robinson minors, the Minor Trusts and/or North Hampton must submit to arbitration their claims against the Deutsche Defendants.  This group of Plaintiffs is sometimes referenced below as "the nonsignatory Plaintiffs."

The Deutsche Defendants assert two equitable estoppel arguments in support of compelling the nonsignatory Plaintiffs to arbitration.[10]  The first argument is founded on a set of equitable estoppel principles summarized in Washington Mutual Finance Group, LLC v. Bailey, 364 F.3d 260 (5th Cir. 2004).

> In the arbitration context, the doctrine [of estoppel] recognizes that a party may be estoped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him. To allow [a party] to claim the benefit of the contract and simultaneously avoid its burdens would both disregard equity and contravene the purposes underlying enactment of the Arbitration Act.

---

[10]In the context of a motion to compel arbitration, federal law controls the issue of equitable estoppel. Washington Mut. Fin. Group, LLC v. Bailey, 364 F.3d 260, 267 n.6 (5th Cir. 2004).

_Id._ at 268 (citation omitted).  That is, if a nonsignatory party's claims or defenses arise from a contract which contains an enforceable arbitration clause, then the nonsignatory is equitably estopped from avoiding arbitration. _Id._ at 267.  In short, "the doctrine of equitable estoppel prevents a party from 'having it both ways.'" _Id._ at 268 (citation omitted).

In the subject case, the claims of the nonsignatory Plaintiffs do not arise out of the Customer's Agreement between the Chew Trust and DB Alex. Brown.  In the complete absence of the Customer's Agreement, Plaintiffs' claims as stated in the Complaint would nevertheless be viable.[11]  The Court therefore finds that the first equitable estoppel argument asserted by the Deutsche Defendants is without merit.

The second equitable estoppel argument asserted by the Deutsche Defendants is based on a theory adopted by the Fifth Circuit in _Grigson v. Creative Artists Agency, L.L.C._, 210 F.3d 524 (5th Cir. 2000).

> [A]pplication of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract. Otherwise the arbitration proceedings between the two signatories would

---

[11]By stating that the claims are "viable," the Court is not ruling one way or the other on the merits of the claims.  The Court is merely finding that the nonsignatory Plaintiffs' claims are not premised on the rights and/or obligations created by the provisions of the Customer's Agreement.

be rendered meaningless and the federal policy in favor
of arbitration effectively thwarted.

Id. at 527 (citation omitted; emphasis omitted).

Applying Grigson, the Deutsche Defendants make many arguments
to the effect that the claims of all plaintiffs in this case are
"substantially interdependent," thus all Plaintiffs must submit
their claims against the Deutsche Defendants to arbitration.
Curiously omitted from the argument is any reference to Bridas
S.A.P.I.C. v. Gov't of Turkmenistan, 345 F.3d 347 (5th Cir. 2003),
a case that directly addresses the issue of whether a signatory
defendant may compel a nonsignatory plaintiff to arbitration.

Citing with approval holdings rendered by the Second and Third
Circuits, the Bridas court stated:

> The Second Circuit has expressly stated that the Grigson
> version of estoppel applies only to prevent "a signatory
> from avoiding arbitration with a nonsignatory when the
> issues the nonsignatory is seeking to resolve in
> arbitration are intertwined with the agreement that the
> estopped party has signed." Thomson–CSF, S.A. [v. Am.
> Arbitration Ass'n], 64 F.3d [733,] 779 [(2d Cir. 1995)]
> (emphasis added). "[B]ecause arbitration is guided by
> contract principles, the reverse is not also true: a
> signatory may not estop a nonsignatory from avoiding
> arbitration regardless of how closely affiliated that
> nonsignatory is with another signing party." MAG
> Portfolio Consult, GMBH [v. Merlin Biomed. Group LLC],
> 268 F.3d [58,] 62 [(2d Cir. 2001)]. The Third Circuit
> reached the same conclusion in [E.I.] DuPont [de Numours
> & Co. v. Rhone Poulenc Fiber & Resin Intermediates,
> S.A.S.], 269 F.3d [187,] 202 [(3d Cir. 2001)].

Id. at 361.

In summary, the Bridas court found that a signatory cannot
compel a nonsignatory to arbitration based solely on a finding that

21

the claims in issue are inexorably intertwined, as in _Grigson_.   To clarify, in _Grigson_ the Fifth Circuit found that a _nonsignatory_ to an arbitration agreement _could compel to arbitration_ a _signatory_ to the agreement.   In _Bridas_, the Fifth Circuit found that under a converse fact scenario, the movant has no right to compel arbitration; that is, a _signatory_ to an arbitration agreement _cannot compel to arbitration_ a _nonsignatory_ to the agreement, at least under the estoppel theory that the claims of the signatory and nonsignatory are intertwined with one another.[12]   To find otherwise, the _Grigson_ "version of equitable estoppel would 'threaten to overwhelm the fundamental premise that a party cannot be compelled to arbitrate a matter without its agreement.'" _Bridas_, 345 F.3d at 361 (citation omitted).[13]

---

[12]This legal principle does _not_ apply under the first equitable estoppel theory analyzed above; i.e., when a nonsignatory plaintiff's claims are based specifically on the provisions of a contract containing an enforceable arbitration clause.

[13]The failure of the Deutsche Defendants to acknowledge the holdings in _Bridas_ raises a concern.  Under Rule 3.3(a)(3) of the Mississippi Rules of Professional Conduct, "[a] lawyer shall not knowingly ... fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client...."  The Deutsche Defendants were, or reasonably should have been on notice of the holdings in _Bridas_ because that case was cited in a slip opinion which was attached as Exhibit "M" to Deutsche Bank Defendants' Memorandum of Law in Support of Renewed Motion to Dismiss the Action and Compel Arbitration.  Giving the Deutsche Defendants the benefit of the doubt, the Court will assume that the failure to cite _Bridas_ in the subject briefs was an excusable oversight.

This Court holds that the Deutsche Defendants may not compel the nonsignatory Plaintiffs to arbitrate their claims based on the alleged fact that the claims of the Chew Trust (the signatory Plaintiff) are intertwined with the claims of the nonsignatory Plaintiffs.  This finding is consistent with the binding holdings set forth in <u>Bridas</u>.

Notwithstanding the holdings above, one specific argument asserted by the Deutsche Defendants warrants consideration.  The Court is uncertain as to whether this argument falls under the first or the second of the equitable theories analyzed above, or possibly under both theories.  The Deutsche Defendants contend that under paragraph "O" of the transaction confirmations, John S. Chew, Jr. and the nonsignatory Plaintiffs are deemed "affiliates," thus the nonsignatory Plaintiffs should be compelled to arbitration along with Chew.  Examples of the transaction confirmations are attached as Exhibits "F" through "J" of Deutsche Bank Defendants' Memorandum of Law in Support of Renewed Motion to Dismiss the Action and Compel Arbitration, Docket Entry No. 96.

This argument is not well taken for two reasons.  First, under the transaction confirmations, Chew and the nonsignatory Plaintiffs are deemed "affiliates" <u>*only*</u> with respect to the "Master Agreement." <u>Id.</u>  However, the Master Agreement provided by the Deutsche Defendants is not signed by <u>*any*</u> party. <u>See</u> <u>id.</u>, Exhibit "K," Master Agreement.  Further, even if the Master Agreement were

signed, the Court would nevertheless refrain from compelling the nonsignatory Plaintiffs to arbitration under the subject argument because the Master Agreement under which Chew and the nonsignatory Plaintiffs are deemed "affiliates," contains no arbitration provision.   For these reasons, the Deutsche Defendants argument based on the purported "affiliate" status of the Plaintiffs is rejected by the Court.

The final argument presented on this issue is that the nonsignatory Plaintiffs should be compelled to arbitration because they are third-party beneficiaries under the Customer's Agreement. The Deutsche Defendants present minimal arguments on this issue, and cite no binding case law.  This argument is also rejected by the Court.

Based on the holdings presented above, the Chew Trust and Chew, individually, must submit their claims against the Deutsche Defendants (DB Alex. Brown and Deutsche Bank) to arbitration in accordance with the provisions of the Customer's Agreement.   The nonsignatory Plaintiffs (Trumpore, the Robinson minors, the Minor Trusts and North Hampton) will not be required to submit their claims against the Deutsche Defendants to arbitration.

**4.    Should the Claims that are not Subject to Arbitration (a) be Severed and Remanded to State Court, (b) Remain in this Court and be Stayed Pending Resolution of the Arbitrable Claims, or (c) Remain in this Court and Proceed to Litigation at this Time**

The Deutsche Defendants finally argue that if all Plaintiffs are not compelled to submit all of their claims to arbitration, then the nonarbitrable claims should be stayed pending final resolution of the arbitrable claims.  Before this issue can be decided, the Court must consider whether the nonarbitrable claims against the Deutsche Defendants should be severed and remanded to state court for lack of jurisdiction.

A district court may exercise supplemental jurisdiction over claims for which it has no original jurisdiction if those claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy...." 28 U.S.C. § 1367(a).  Under the facts of this case, the Court finds that the arbitrable claims over which the Court has original jurisdiction and the nonarbitrable claims "form part of the same case or controversy."  Accordingly, the Court will exercise supplemental jurisdiction over the nonarbitrable claims, and no claims in this case will be severed and remanded to state court.[14]

------------

[14]The Court notes an argument can be made that original federal jurisdiction exists over the nonarbitrable claims because they are asserted in a cause of action which contains arbitrable claims under the FAA, and in particular under The Convention.  A ruling on that issue is not made herewith because, to the extent that

Regarding the request for a stay of the nonarbitrable claims, the Deutsche Defendants rely on 9 U.S.C. § 3, which states in relevant part:

> If any suit or proceeding be brought ... upon any issue referable to arbitration ..., the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration ..., shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the [arbitration] agreement....

Under the Plain language of § 3, DB Alex. Brown, as a signatory to the Customer's Agreement, is clearly entitled to a stay of all nonarbitrable claims against it in this suit.

Regarding the right to a stay requested by Deutsche Bank as a nonsignatory to the Customer's Agreement, the Court looks to the holdings in <u>Waste Mgt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.</u>, 372 F.3d 339 (5th Cir. 2004). The stay provisions of § 3 "usually [apply] only to the parties to an arbitration agreement[.]" <u>Id.</u> at 342 (citation omitted). However, as recognized by the court in <u>Adams v. Georgia Gulf Corp.</u>, 237 F.3d 538, 540 (5th Cir. 2001), "[t]he clarity of this rule denying the applicability of the mandatory stay provision to non-parties has been muddied" by recent Fifth Circuit case law.

---

original jurisdiction does <u>*not*</u> exist for those claims under the FAA, the Court will exercise supplemental jurisdiction over the claims under § 1367(a).

Consistent with the trend of allowing a nonsignatory to invoke the stay provisions of § 3 under certain circumstances, the Waste Mgt. court held that the language of that code section allows for "situation[s] where a non-signatory requests a stay of litigation on an issue covered by an arbitration agreement." Waste Mgt., 372 F.3d at 342. Factors to consider in determining whether a nonsignatory has the right to invoke a stay under § 3 are "[1] the similarity of the operative facts, [2] the inseparability of claims, and [3] the effect of the litigation on the arbitration." Id. at 344. The Court has considered these factors in the context of a § 3 stay, and finds that the nonarbitrable claims asserted against Deutsche Bank should be stayed.

In the alternative, the Court finds that Deutsche Bank is entitled to a stay of the nonarbitrable claims because DB Alex. Brown signed the Customer's Agreement as an agent of Deutsche Bank. As found above, DB Alex. Brown is clearly entitled to a stay of the nonarbitrable claims under § 3. Through the principal / agent relationship, Deutsche Bank is afforded the same right to request a stay as DB Alex. Brown. See generally, Nauru Phosphate Royalties, 138 F.3d at 166-67; Gulf Guar. Life Ins. Co., 957 F.Supp. at 841-42.

## 5. Conclusion - Renewed Motion of the Deutsche Defendants to Dismiss the Action and Compel Arbitration

Based on the holdings presented above, the Renewed Motion of the Deutsche Defendants to Dismiss the Action and Compel

Arbitration should be denied in part and should be granted in part. The Motion should be granted to the extent that Plaintiffs Chew, individually, and the Chew Trust must submit to arbitration their claims against Defendants Deutsche Bank and DB Alex. Brown.  The Motion should be denied to the extent that Plaintiffs Trumpore, the Robinson minors, the Minor Trusts and North Hampton are not required to submit to arbitration their claims against Defendants Deutsche Bank and DB Alex. Brown.  Regarding the stay issue, the claims of Plaintiffs Trumpore, the Robinson minors, the Minor Trusts and North Hampton against Defendants Deutsche Bank and DB Alex. Brown must be stayed until final resolution of the arbitrable claims.

**B.    Renewed Motion of KPMG, LLP to Compel Arbitration and Stay Proceeding, or, Alternatively, for Additional Time to Respond to Complaint**

On September 12, 2005, Defendant KPMG filed its Renewed Motion to Compel Arbitration and Stay Proceedings, or, Alternatively, for Additional Time to Respond to the Complaint.  That Motion was joined by Defendants Johnson and Bruce on September 15, 2005. Johnson and Bruce are agents of KPMG.  Defendant Henderson, who is also an agent of KPMG, joined in the subject Motion on September 22, 2005.  These four Defendants are sometimes referenced below as "the KPMG Defendants."  Through the Motion, the KPMG Defendants seek to compel all of the Plaintiffs to arbitration, and to stay the case until the arbitration process is complete.

28

First considered is whether the KPMG Defendants can compel Chew, individually, and the Chew Trust to arbitration.  The Chew Trust is a signatory to the Customer's Agreement, and as found above in section II.A.3. of this Opinion, Chew, individually, is bound to the provisions of the Customer's Agreement as if he were a signatory.  None of the KPMG Defendants is a signatory to the Customer's Agreement.

The holdings in <u>Grigson</u> apply to the issue of whether the KPMG Defendants can compel to arbitration Chew, individually, and the Chew Trust.  If a claim involves "substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract[,]" then a nonsignatory can compel the signatory claimant to arbitration. <u>Grigson</u>, 210 F.3d at 527 (citation omitted; emphasis omitted); <u>see also</u> <u>Bridas</u>, 345 F.3d at 361.  Without the need for a detailed analysis, the Court finds that the claims asserted by Plaintiffs involve interdependent alleged misconduct by all Defendants.  Therefore, Chew, individually, and the Chew Trust must submit to arbitration their claims against the KPMG Defendants.

Next considered is whether the nonsignatory Plaintiffs should be compelled to arbitrate their claims against the KPMG Defendants.  As the Court held above in section II.A.3. of this Opinion, a *signatory* to an arbitration agreement *cannot compel to arbitration* a *nonsignatory* to the agreement, at least under the estoppel theory

that the claims of the signatory and nonsignatory are intertwined with one another.  What the KPMG Defendants ask the Court to do is one step further removed from the principle set forth in that holding.  That is, the KPMG Defendants, as *nonsignatories* to the arbitration agreement, seek to compel the *nonsignatory* Plaintiffs to arbitration.  Obviously, under the holdings in Bridas, this Court cannot grant the request of the KPMG Defendants on this issue.  The Motion must be denied to the extent that the nonsignatory Plaintiffs will not be required to arbitrate their claims against the KPMG Defendants.

The last issue to be addressed regarding the subject Motion is whether the nonarbitrable claims against the KPMG Defendants should be stayed.  Based on the holdings presented supra in section II.A.4. of this Opinion, said claims must be stayed.[15]

In summary, the Renewed Motion of KPMG to Compel Arbitration and Stay Proceeding, or, Alternatively, for Additional Time to Respond to Complaint should be denied in part and should be granted in part.  The Motion should be granted to the extent that Plaintiffs Chew, individually, and the Chew Trust must submit to arbitration their claims against Defendants KPMG, Johnson, Bruce and Henderson.  The Motion should be denied to the extent that Plaintiffs Trumpore, the Robinson minors, the Minor Trusts and

_____

[15]The alternative basis for a stay analyzed in section II.A.4., based on the principal / agent theory, does not apply in this analysis.

North Hampton will not be required to submit to arbitration their claims against Defendants KPMG, Johnson, Bruce and Henderson.  The Motion should be further granted to the extent that the claims of Plaintiffs Trumpore, the Robinson minors, the Minor Trusts and North Hampton against Defendants KPMG, Johnson, Bruce and Henderson must be stayed until the arbitrable claims are finally resolved.

**C.   Renewed Motion of Defendants Presidio and Larson to Stay Proceedings, and in the Alternative to Dismiss the Complaint**

Through the Renewed Motion to Stay Proceedings, and in the Alternative to Dismiss the Complaint, Defendants Presidio and Larson seek to dismiss the claims against them pursuant to the provisions of Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, or alternatively for a stay of the claims pending completion of the arbitration process.  The Court notes that Presidio and Larson do *not* seek to compel Plaintiffs to arbitrate the claims against them.

The Court has reviewed the arguments pertaining to the Motion to Dismiss, and finds that the arguments are without merit.  Accordingly, the Motion to Dismiss must be denied.  Based on the holdings above in section II.A.4. of this Opinion, a stay of the claims against Presidio and Larson will be ordered.[16]  The stay will be lifted when the arbitrable claims are finally decided.

---

[16]*See supra*, footnote 15.

**D.  Renewed Motion of Defendant Brown & Wood to Compel Arbitration and to Stay all Proceedings, and Joinder in KPMG LLP's Renewed Motion to Compel Arbitration and Deutsche Bank Defendants' Renewed Motion to Dismiss the Action and Compel Arbitration**

Through this Motion, Defendant Brown & Wood seeks to compel arbitration of all claims asserted against it, and to stay the case.  The Motion to Compel should be granted to the extent that Chew, individually, and the Chew Trust must submit their claims against Brown & Wood to arbitration. See supra, analyses and holdings presented in section II.B. of this Opinion.  The Motion should be denied to the extent that Trumpore, the Robinson minors, the Minor Trusts and North Hampton will not be required to submit their claims against Brown & Wood to arbitration. Id.  Finally, the Motion to Stay the nonarbitrable claims of Trumpore, the Robinson minors, the Minor Trusts and North Hampton against Brown & Wood should be granted. See supra, analyses and holdings presented in section II.A.4. of this Opinion.[17]

**E.  Claims Against the Nonmoving Defendants**

Defendants Ruble, Funston Street LLC, Funston Street, Ltd., Vallejo Street LLC, Vallejo Street, Ltd., and Athabasca, L.P. have neither moved the Court to compel the arbitration and/or stay Plaintiffs' claims against them, nor joined in any of the Motions currently before the Court.  The Court will nevertheless exercise its discretion and stay all claims against these Defendants pending

───────────

[17]See supra, footnote 15.

completion of the arbitration process. <u>See</u> <u>United States v.</u> <u>$9,041,598.68 (Nine Million Forty One Thousand Five hundred Ninety Eight Dollars and Sixty Eight Cents)</u>, 163 F.3d 238, 251 (5th Cir. 1999)(holding that a federal district court has the discretionary authority to stay a proceeding "to control the course of litigation."); <u>Wedgeworth v. Fireboard Corp.</u>, 706 F.2d 541, 545 (5th Cir. 1983)(holding that a federal district court has the discretionary authority "to stay proceedings in the interest of justice and in control of their dockets.").

### III.  Conclusion

Based on the holdings presented above:

IT IS THEREFORE ORDERED that,

1)    the Renewed Motion of KPMG, LLP to Compel Arbitration and Stay Proceeding, or, Alternatively, for Additional Time to Respond to Complaint (docket entry no. 90),

2)    the Renewed Motion of Defendant Presidio Advisors, LLC and Defendant John Larson to Stay Proceedings, and in the Alternative to Dismiss the Complaint (docket entry no. 92),

3)    the Renewed Motion of Defendant Deutsche Bank AG and Defendant Deutsche Bank Securities, Inc., d/b/a Deutsche Bank Alex. Brown to Dismiss the Action and Compel Arbitration (docket entry no. 95), and

4)    the Renewed Motion of Defendant Sidley Austin Brown & Wood, LLP to Compel Arbitration and to Stay all Proceedings, and

Joinder in KPMG LLP's Renewed Motion to Compel Arbitration and Deutsche Bank Defendants' Renewed Motion to Dismiss the Action and Compel Arbitration (docket entry no. 97),

are hereby granted in part and are hereby denied in part, as follows:

1)    Plaintiffs John S. Chew, Jr., individually and The John S. Chew, Jr. Revocable Trust must submit to arbitration their claims against Defendants KPMG, LLP, Peder Johnson, Tracie Henderson, Donna Bruce, Sidley Austin Brown & Wood, LLP, Deutsche Bank AG, and Deutsche Bank Securities, Inc. d/b/a Deutsche Bank Alex. Brown.  The arbitration must be in accordance with the applicable provisions of the Customer's Agreement signed by Plaintiff The John S. Chew, Jr. Revocable Trust and Defendant Deutsche Bank Securities, Inc. d/b/a Deutsche Bank Alex. Brown;

2)    The claims of Plaintiffs John S. Chew, Jr., individually and The John S. Chew, Jr. Revocable Trust against Defendants R. J. Ruble, Presidio Advisors LLC, John M. Larson, Funston Street LLC, Funston Street Ltd., Vallejo Street LLC, Vallejo Street Ltd. and Athabasca, L.P. are hereby stayed until final resolution of the arbitrable claims described in paragraph one above;

3)    Plaintiffs Karen Trumpore f/k/a Karen Robinson, individually and on behalf of minors Claire Robinson, Kelly Robinson and

34

Olivia Robinson, the Claire E. Robinson Subchapter S Trust, the Kelly P. Robinson Subchapter S Trust, the Olivia A. Robinson Subchapter S Trust, and North Hampton Investments, LLC, are not required to submit to arbitration any of their claims against any of the Defendants;

4) All of the claims of Plaintiffs Karen Trumpore f/k/a Karen Robinson, individually and on behalf of minors Claire Robinson, Kelly Robinson and Olivia Robinson, the Claire E. Robinson Subchapter S Trust, the Kelly P. Robinson Subchapter S Trust, the Olivia A. Robinson Subchapter S Trust, and North Hampton Investments, LLC, are hereby stayed until final resolution of the arbitrable claims described in paragraph one above; and

5) No claims in this cause of action are dismissed.

IT IS FURTHER ORDERED that the parties must report to the Court on or before **Wednesday, May 31, 2006**, regarding the status of the arbitration process.  The parties are encouraged to complete the arbitration process by that date.

SO ORDERED this the 9th day of January, 2006.


                                    s/ William H. Barbour, Jr.
                                    UNITED STATES DISTRICT JUDGE

tct